NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT J. and JAIME RYAN,<br><br>      Plaintiffs,<br>  v.<br><br>LIBERTY MUTUAL INSURANCE,<br><br>      Defendant. | OPINION<br><br>Civ. No. 14-06308 (WHW) (CLW) |

**<u>Walls, Senior District Judge</u>**

  In this insurance coverage dispute arising from Hurricane Sandy, Defendant Liberty Mutual Insurance ("Liberty Mutual") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for violations of the New Jersey Consumer Fraud Act, punitive damages, and attorneys' fees. Without oral argument under Federal Rule of Civil Procedure 78(b), the Court grants Liberty Mutual's motion in part and denies it in part.

### FACTUAL AND PROCEDURAL BACKGROUND

  Plaintiffs Robert and Jaime Ryan, New Jersey residents whose home was damaged during Hurricane Sandy, initiated this action against Liberty Mutual on October 10, 2014. Compl. ¶¶ 1, 3, 6, ECF No. 1. Plaintiffs allege that they purchased homeowner's insurance from Liberty Mutual, with maximum coverage of $1,635,740, and that their "home and its contents were essentially destroyed by Hurricane Sandy." *Id.* ¶¶ 3-5. Plaintiffs contend that "Liberty Mutual has unreasonably and in bad faith denied coverage and underpaid for the damage." *Id.* ¶ 6. They assert that Liberty Mutual's agents "improperly adjusted and denied Plaintiffs' claims without adequate investigation, even though Plaintiffs' losses were covered by the Policy." *Id.* ¶ 22. They also claim, among other things, that Liberty Mutual was "deceptive in the adjustment of this claim" by

"fraudulently creating values and assigning them to the covered loss to increase its own profitability" and by "fraudulently telling its policyholder that the losses were not covered despite evidence that they were." *Id.* ¶ 43. Plaintiffs further allege that Liberty Mutual's response to their claim was part of "an ongoing, widespread and continuous scheme to defraud its insureds in the payment of benefits under their policies of insurance." *Id.* ¶ 44.

Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New Jersey Consumer Fraud Act ("NJCFA"). *Id.* ¶¶ 27-46. They seek compensatory, consequential, punitive, and statutory damages as well as attorneys' fees and costs. *Id.* ¶¶ 38, 46. Liberty Mutual now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' NJCFA claim, their claim for punitive damages, and their claim for attorneys' fees and costs. Def.'s Mem. 1, ECF No. 14-1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

"In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citations omitted).

## DISCUSSION

### 1. Plaintiffs Have Adequately Stated an NJCFA Claim

Liberty Mutual moves to dismiss Plaintiffs' NJCFA claim. Def.'s Mem. 5-9. The NJCFA "is remedial legislation" that the New Jersey Supreme Court "construe[s] liberally to accomplish its broad purpose of safeguarding the public." *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004). In relevant part, the statute prohibits

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2. There are three elements to an NJCFA claim: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *D'Agostino v. Maldonado*, 216 N.J. 168, 184 (2013) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). Motions to dismiss NJCFA claims are "appropriately approached with hesitation." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (App. Div. 2003).

Liberty Mutual argues that Plaintiffs' claim must be dismissed because the NJCFA "does not apply to disputes about insurance benefits or coverage." Def.'s Mem. 5. Plaintiffs contend that the NJCFA does extend to benefit payment disputes. Pls.' Opp. 1, ECF No. 16. This issue has not been resolved by the New Jersey Supreme Court. To ascertain New Jersey law in the absence of a

**NOT FOR PUBLICATION**

New Jersey Supreme Court decision, a federal court must attempt to predict how the New Jersey Supreme Court would rule. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). Federal courts "look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* at 216-17 (citing *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86 (3d Cir. 2008)).

In the 1980s, the New Jersey Appellate Division held that the NJCFA does not apply to the payment of insurance benefits. *Pierzga v. Ohio Casualty Group of Ins. Cos.*, 208 N.J. Super. 40 (N.J. Super. Ct. App. Div. 1986), *certif. denied*, 104 N.J. 399 (1986); *Nikiper v. Motor Club of America*, 232 N.J. Super. 393 (N.J. App. Div.), *certif. denied*, 117 N.J. 139 (1989). In 1997, the New Jersey Supreme Court declined to express any opinion on the validity of those holdings. *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 265 n.3 (1997). The New Jersey Supreme Court concluded that "although several lower courts have held that the payment of insurance benefits is not subject to the [NJ]CFA, . . . our reading of the [NJ]CFA convinces us that the statute's language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." *Id.* at 265. The New Jersey Appellate Division has since maintained that "while the [NJ]CFA encompasses the sale of insurance policies as goods and services that are marketed to consumers, it was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." *Myska v. New Jersey Mfrs. Ins. Co.*, No. A-0275-14T4, 2015 WL 2130870, at *13 (N.J. Super. Ct. App. Div. May 8, 2015).

In 2007, the Third Circuit Court of Appeals overturned a district court opinion that adopted the New Jersey Appellate Division's limitation on the NJCFA. *Weiss v. First Unum Life Ins. Co.*,

4

482 F.3d 254, 266 (3d Cir. 2007). The Third Circuit predicted that, despite the Appellate Division's position, the New Jersey Supreme Court would extend the NJCFA to an insurer's "performance in the providing of benefits." *Id.* The Third Circuit explained:

> We do not share the District Court's conviction that the [NJ]CFA and its treble damages provision are inapplicable to schemes to defraud insureds of their benefits. . . . The [NJ]CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations). We conclude that while the New Jersey Supreme Court has been silent as to this specific application of [the NJ]CFA, its sweeping statements regarding the application of the [NJ]CFA to deter and punish deceptive insurance practices makes us question why it would not conclude that the performance in the providing of benefits, not just sales, is covered, so that treble damages would be available for this claim under the [NJ]CFA.

*Id.* Most recently, without referencing *Weiss*, the Third Circuit noted in dicta that "New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act." *Granelli v. Chicago Title Ins. Co.*, 569 F. App'x 125, 133 (3d Cir. 2014).

Federal district courts in New Jersey have split on whether to dismiss NJCFA claims based on an insurer's denial of benefits. Some have declined to dismiss the claims. *See, e.g.*, *Bannon v. Allstate Ins. Co.*, No. 14-1229, 2015 WL 778828, at *4 (D.N.J. Feb. 24, 2015); *Beekman v. Excelsior Ins. Co.*, No. 14-363, 2014 WL 674042 (D.N.J. Feb. 21, 2014). Others have granted dismissal. *See, e.g.*, *Gilliam v. Liberty Mutual Fire Insurance Co.*, Civ. No. 14-00361 (Sept. 26, 2014); *Fuscarello v. Combined Ins. Group, Ltd.*, No. 11-723, 2011 WL 4549152, at *6 (D.N.J., Sept. 29, 2011).

In *Weiss*, the Third Circuit examined the New Jersey Supreme Court's statements in *Lemelledo*, and predicted that it would apply the NJCFA to an insurer's "performance in providing the benefits" of an insurance contract. *Weiss*, 482 F.3d at 266. This conclusion accords with the New Jersey Supreme Court's general practice of construing the NJCFA "liberally to accomplish its broad purpose of safeguarding the public." *Furst*, 182 N.J. at 11-12. As the Third Circuit noted,

5

it also accords with the NJCFA's text, which indicates that the NJCFA applies to a person's fraudulent conduct whether it occurs "in connection with the sale or advertisement of any merchandise or real estate, *or with the subsequent performance of such person as aforesaid*." N.J. Stat. Ann. § 56:8-2 (emphasis added).

Here, Plaintiffs' NJCFA claim goes to Liberty Mutual's subsequent performance of its obligations under the insurance contract. Plaintiffs do not merely claim that Liberty Mutual underpaid their benefits, which would amount only to breach of contract, but instead assert that Liberty Mutual acted deceptively and fraudulently when investigating their property damage. Compl. ¶¶ 43-44. Their NJCFA claim accuses Liberty Mutual of "telling its policyholder that the losses were not covered despite evidence that they were," in "creating values and assigning them to the covered loss to increase its own profitability," and "in falsely misrepresenting what its responsibilities were under the policy." *Id.* ¶ 43. By alleging that Liberty Mutual's investigatory conduct was deceptive, Plaintiffs make clear that their NJCFA claim targets Liberty Mutual's conduct in performing its contract obligations—which distinguishes their NJCFA claim from the type of mere underpayment allegation that concerns the New Jersey Appellate Division. *See Myska*, 440 N.J. Super. at 485 (stating that the NJCFA "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits."). This Court will follow *Weiss* in predicting that the New Jersey Supreme Court would apply the NJCFA to Liberty Mutual's allegedly deceptive conduct in investigating Plaintiffs' property damage. Liberty Mutual's motion to dismiss Plaintiff's NJCFA claim is denied.

**2. Plaintiffs' Claim for Punitive Damages Is Insufficient**

Liberty Mutual argues that Plaintiffs' claim for punitive damages must be dismissed because the complaint omits "any allegation of an outrageous intentional tort." Def.'s Mem. 10.

**NOT FOR PUBLICATION**

Plaintiffs' opposition brief does not specifically contest Liberty Mutual's motion to dismiss their punitive damages claim. Pls.' Opp. 8. "[A]bsent egregious circumstances, no right to recover for emotional distress or punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim." *Pickett v. Lloyd's*, 131 N.J. 457, 476 (1993). Rather, "deliberate, overt, and dishonest dealings, insult and personal abuse constitute torts entirely distinct from the bad-faith claim." *Id.* (internal quotations and alterations omitted). Plaintiffs have not pled facts that rise to the level of egregiousness necessary for punitive damages in an insurance contract case. Their claim for punitive damages is dismissed.

### 3. Plaintiffs May Be Entitled to Attorneys' Fees

Plaintiffs' complaint includes two requests for attorneys' fees, in connection with their claim for breach of the implied covenant of good faith and fair dealing and in their Request for Relief. Compl. ¶¶ 38, 46. Liberty Mutual argues that New Jersey law precludes any grant of attorney fees on first-party claims for insurance benefits. Defs.' Mem. 12-14.

While N.J. Court Rule 4:42–9(a)(6) provides that attorney fees may be permitted "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant," the New Jersey Supreme Court has stated that "the Rule does not apply when the insured brings direct suit against his insurer to enforce casualty or other direct coverage." *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 181 N.J. 245 (2004) (citing *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345 (1996)) (internal alterations omitted). Plaintiffs cite two New Jersey Appellate Division opinions which awarded attorneys' fees in first-party bad faith insurance actions. Neither of these cases, however, provides a rationale for its evasion of the New Jersey Supreme Court's holding that attorneys' fees are unavailable in first-party insurance claims. *See Taddei v. State Farm Indem. Co.*, 401 N.J. Super. 449, 461 (App. Div. 2008); *Bello v. Merrimack*

**NOT FOR PUBLICATION**

*Mut. Fire Ins. Co.*, No. A-4750-10T4, 2012 WL 2848642, at *14 (App. Div. July 12, 2012). This Court finds that the New Jersey Supreme Court's holdings bar the recovery of attorneys' fees in connection with Plaintiffs' claim for breach of the implied covenant. *See also Bannon*, 2015 WL 778828, at *6. Plaintiffs' request for attorneys' fees arising from their breach of implied covenant claim is dismissed.

Plaintiffs argue that they are still "entitled to attorney's fees by virtue of their Consumer Fraud Act claims." Pls.' Opp. 8. The NJCFA indeed mandates the recovery of attorneys' fees. N.J. Stat. Ann. § 56:8-19 ("In all actions under this section, . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."). As such, the Court denies Liberty Mutual's motion to dismiss Plaintiffs' claim for attorneys' fees in the Request for Relief.

## CONCLUSION

Liberty Mutual's motion to dismiss is granted in part and denied in part. An appropriate order follows.

Date: July 8, 2015

                                           **/s/ William H. Walls**
                                           United States Senior District Judge