FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT J. AND JAMIE RYAN, | : | |
| Plaintiffs, | : | **OPINION** |
| v. | : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | : | Civ. No. 14-6308 (WHW)(CLW) |
| Defendant. | : | |

**Walls, Senior District Judge**

Plaintiffs Robert and Jamie Ryan allege that Defendant Liberty Mutual denied coverage and underpaid insurance benefits after their home was damaged by Hurricane Sandy. Liberty Mutual moves for summary judgment, asserting that the insurance policy's one-year suit limitation bars Plaintiffs' lawsuit. Decided without oral argument pursuant to Fed. R. Civ. P. 78, Defendant's motion is granted.

### FACTUAL AND PROCEDURAL HISTORY

Defendant Liberty Mutual issued a homeowner's insurance policy to Plaintiffs Robert and Jamie Ryan insuring Plaintiffs' residence at 26 Buttonwood Lane in Rumson, New Jersey for the period of October 20, 2012 to October 20, 2013. Statement of Undisputed Material Facts, ECF No. 29-2 ¶ 1. On October 29, 2012, Hurricane Sandy made landfall in New Jersey, causing significant property damage, including to Plaintiffs' home. On October 30, 2012, Plaintiffs notified Defendant Liberty Mutual that the entire main floor of their home had been damaged as a result of Hurricane Sandy. *Id.* ¶ 2. On November 15, 2012, an independent adjuster retained by

1

Defendant conducted an inspection at the Plaintiffs' home. A second inspection was conducted on November 29, 2012. *Id.* ¶ 3. On November 30, 2012 Defendant mailed a letter to Plaintiffs (the "benefits letter"), which explained the payment of policy benefits under their homeowner's policy, and denied Plaintiffs benefits for excluded flood damage. Defendant determined that Plaintiffs were owed $4,784.14 for non-flood-related damage caused by Hurricane Sandy. Benefits for flood damage were denied because Plaintiffs' policy did not cover water damage, and because Defendant had previously made a payment to Plaintiffs for damage to a living room wall during a previous storm, but inspection revealed that Plaintiffs had not repaired the wall. The letter reads in relevant part:

> We have completed our investigation of your claim . . . Based on our investigation into your claim, we regret to inform you that the damage to your home's flooring, contents in the home and the garage cannot be paid for at this time as your policy does not afford coverage for water damage related to flood. . . . With respect to said damage, we have reviewed the adjuster's report along with the loss settlement of a prior claim under your Homeowner's Policy, and as such, it appears repairs to the living room wall have not been made. Likewise, no documentation has been received verifying repairs were made to the living room wall. If said property was repaired or replaced prior to 10/29/2012, please advise and send us documentation verifying same. . . . Since payment for damage to living room wall has been previously settled in accordance with the provisions [of the policy] but not since repaired or replaced, no payment under this claim can be made.

Mot. Summ. J., Exhibit 3, ECF No. 29-6.

The letter also notified the Plaintiffs that they could contact Liberty Mutual with any questions or additional "information which might be used to reconsider our coverage decision." *Id.* Finally, the letter states that Liberty Mutual has an internal appeals process, and provides contact information for submitting an appeal. *Id.* Plaintiffs received a copy of this letter by email on December 10, 2012. Statement of Undisputed Material Facts, ECF No. 29-2 ¶ 5.

On December 10, 2012, upon receiving the payment of benefits letter from Defendant, Plaintiff Jamie Ryan asked Paul Englund, a representative of Defendant Liberty Mutual, for

recommendations for a contractor to perform the necessary repair work on Plaintiffs' home, and thanked him in advance for "revisiting" the claim summary. *Id.* at ¶ 5. Mr. Englund replied, offering to send another Liberty Mutual claims adjuster out to the Plaintiffs' home. Plaintiffs were also provided with the names and addresses of recommended contractors. *Id.* Plaintiff Jamie Ryan responded to Mr. Englungd, noting concern that no benefits were paid for the garage, which was both flooded, and "damaged by the storm." *Id.* Plaintiffs never provided Defendant with any additional information regarding benefits for damage to the garage. *Id.*

On January 30, 2013, Plaintiff Jamie Ryan asked Defendant for a payment letter setting out all homeowners' benefits paid to Plaintiffs by Defendant for FEMA purposes. Defendant provided Plaintiffs with a letter for this purpose. *Id.* at ¶¶ 8-9.

On March 5, 2013, Plaintiff Jamie Ryan notified Defendant via telephone that she was going to send documentation supporting a claim for 'Additional Living Expense' homeowner benefits for pet transportation, airfare, food receipts and "much more." Statement of Undisputed Material Facts, ECF No. 29-2 ¶ 11. Liberty Mutual advised Jamie Ryan to send the documentation to them for review, but it was never sent. *Id.*

Plaintiff Jamie Ryan contacted Liberty Mutual again on January 24, 2014, notifying them that she would be sending a list of damaged items and invoices relating to Plaintiffs' claim. Again, no documentation was provided. *Id.* at ¶ 12.

Plaintiffs filed suit on October 10, 2014 alleging breach of contract, bad faith, and violation of the New Jersey Consumer Fraud Act. Compl., ECF No. 1. Plaintiffs' homeowner's policy required that any suit must be filed within one year of the date of the loss. Mot. for Summ. J., Exhibit 1, ECF No. 29-4 at 10. The present motion for summary judgment was filed by Defendant on June 28, 2016.

FOR PUBLICATION

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, the Court's "function is not . . . to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, and it is "inappropriate for a court to . . . make credibility determinations." *Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

FOR PUBLICATION

## DISCUSSION

### I. Plaintiffs' claims are subject to a one-year statute of limitations

Under New Jersey state law, parties may contract to shorten the default six-year statute of limitations for insurance actions. *James v. Fed. Ins. Co.*, 73 A.2d 720, 721 (1950). One-year statutes of limitations in insurance suits have been "routinely upheld" in New Jersey. *Eagle Fire Protection Corp. v. First Indemnity of Am. Ins. Co.*, 145 N.J. 345, 354-355 (1990).

The doctrine of equitable tolling acts as a limitation on contractual one-year suit limitations, such as the one in Plaintiffs' homeowner's policy, by tolling the statute of limitations during the period in which the insurance company is investigating the loss. *Peloso v. Hartford Ins. Co.*, 56 N.J. 514, 521 (1970). In an insurance dispute, the statute of limitations begins to run on the date of the casualty, but is tolled from the time the insured gives notice until the time the insurer formally declines coverage. *Id.*

Accordingly, the one-year statute of limitations in Plaintiffs' homeowner's policy began to run on October 29, 2012 – the date that Hurricane Sandy damaged Plaintiffs' home – and was tolled from October 30, 2012 – the date Plaintiffs made a claim for homeowner's insurance benefits – until the date Defendant declined liability. Plaintiffs and Defendant are in disagreement as to when liability for flood-related damage was ultimately denied. Defendant asserts that the statute of limitations began to run again on December 10, 2012, the date that Liberty Mutual completed its factual investigation and paid Plaintiffs the benefits that they were due. The statute of limitations then ran without further tolling for 12 months, until December 10, 2013, after which point Plaintiffs were prohibited from bringing suit. Plaintiffs argue that the letter they received on December 10, 2012, was not an unequivocal denial sufficient to stop the tolling of the statute of limitations. In order to determine whether the one-year statute of

5

FOR PUBLICATION

limitations bars Plaintiffs from bringing this claim, the Court must determine whether the benefits letter was, on its face, a formal denial of coverage.

## II. The benefits letter was an unequivocal denial of coverage, which acted to restart the running of the statute of limitations

Plaintiffs rely on *Azze v. Hanover Ins. Co.*, 336 N.J. Super. 630, 765 (App. Div. 2001), to argue that three elements of the benefits letter render it ambiguous: (1) the letter lays out the coverage that Defendants *did* agree to pay for, (2) the lack of the word denial anywhere in the letter, and (3) the absence of a reference to the "suit against us" provision of Plaintiffs' homeowner's policy. *Azze* held that where these factors, among others, were present, a denial of benefits letter could be found to be ambiguous, failing to restart the statute of limitations. *Id.* at 643.

### a. The benefits letter lays out both benefits denied and those Defendant agreed to pay for

Plaintiffs rely on *Ligouri v. Certain Underwriters*, 2015 WL 4402851 (D.N.J. July 17, 2015) to argue that the benefits letter was ambiguous in its denial of flood damage because it also laid out those damages that Defendant *did* agree to pay for. But Plaintiffs' reliance on *Ligouri* is misplaced. The plaintiffs in that case received a letter from their insurance company which told plaintiffs that they were "pleased to inform" them that damages resulting from wind were covered under their policy. The dollar amounts of the estimates were left blank but "it would appear that Plaintiffs were to receive some money for the wind damage to their property." *Id.* at *4. In actual fact, adjusters had determined that all of the damage to the plaintiffs' home had been caused by flooding and that any damage from wind was "insignificant relative to the demolition of the house by the flooding." *Id.* at *1. In this manner, the letter in *Ligouri* was

6

misleading in the way it laid out the benefits awarded to the plaintiffs, making it appear as if they would be receiving some sum of money for the damage to their home, when this was not the case.

Such is not an analogous situation. Here Plaintiffs were clearly told in the benefits letter that they would not be receiving any benefits for flood related damage: "We regret to inform you that the damage to your home . . . cannot be paid for at this time as your policy does not afford coverage for water damage related to flood." Mot. for Summ. J., Exhibit 3, ECF No. 29-6. Unlike the letter in *Ligouri*, this statement is clear and direct in its denial of benefits. The language is as plain as it could be. The inclusion of a statement of benefits paid for wind damage does not obscure it.

Plaintiffs also rely on *Inacio v. State Farm*, 2015 WL 457049 (D.N.J. Feb. 3, 2015) to argue that the November 30 letter was ambiguous because it included statements about both covered wind damage and uncovered flood damage. The *Inacio* court found a purported denial of benefits letter ambiguous where the letter stated "damage to your dwelling and contents were caused by flood. Damage resulting from this cause of loss is not covered by your policy." *Id.* at *6. The *Inacio* court found this to be an ambiguous statement because the letter referred *only* to flood damage, did not indicate how much of the overall damage was caused by flood, and did not make reference to an amount previously paid by the insurance company for wind and rain damage. *Id.*

This is the opposite situation from our matter. It would seem that *Inacio* stands for the reverse proposition from that which Plaintiffs rely on it for – that both benefits paid and benefits denied ought to be mentioned in the same letter. Furthermore, this Court does not find the reasoning of *Inacio* persuasive. It is plainly obvious from the language of the letter in *Inacio*, and

7

the letter at issue here, that coverage for flood damage is excluded under the plaintiffs' insurance policy. There is no persuasive rationale to determine that an unambiguous denial letter must either lay out both benefits granted and denied, or only those denied. All that the law requires is that the letter be clear in its refusal or denial of the benefit. In some factual circumstances, such as those presented in *Ligouri,* laying out both benefits paid and benefits denied in the same letter may render that letter ambiguous. However, here the letter is specific: denial or refusal of benefits for water related damage.

### b. The word "denial" does not appear anywhere in the benefits letter

Plaintiffs argue that because the word "denial" does not appear anywhere in the letter, this renders the letter ambiguous in its denial of benefits. Plaintiffs again rely on *Inacio*, for the proposition that the actual word "denial" must appear in the letter. All that *Inacio* requires is "unequivocal denial language." *Inacio*, 2015 WL 457049 at *6. The statement in the benefits letter "we regret to inform you that the damage to your home . . . cannot be paid for at this time as your policy does not afford coverage for water damage related to flood," is synonymous with denial. That the actual word "denial" does not appear is immaterial. Plain language with plain meaning is present.

### c. The contractual limitation on the statue of limitations is not quoted in the letter or otherwise brought to the Plaintiffs' attention

Next, Plaintiffs argue that Defendant ought to have quoted or otherwise included the statute of limitations provision of the homeowners' policy in the benefits letter. This argument is completely unsupported by case law, other than an assertion that the *Inacio* letter, found to be ambiguous, nevertheless included such a statement. Such is not required. There is no applicable case law that requires this kind of statement to be included in a denial of benefits letter. In fact,

8

such a requirement has been expressly rejected. *See, e.g.*, *Preston v. Metro Grp.*, 2016 WL 1060360, at *4 (D.N.J. March 15, 2016) (holding that explicit declination elements not otherwise required by statute or regulation are not required).

### d. The existence of an internal appeals process also does not prevent the benefits letter from acting as an unequivocal denial

Plaintiffs also argue that the existence of Liberty Mutual's internal appeals process, and their statement that should Plaintiffs have any questions or further information they could contact Liberty Mutual created confusion and led them to believe that their claim had not yet been denied. However, it is clear that the existence of an appeals process, or any willingness on the part of the insurer to review additional information does not in and of itself alter the finality of a denial of benefits. *See Boisvert v. State Farm*, 2016 WL 3617960, at *5 (D.N.J. July 6, 2016). The court in *Inacio* also noted that a similar statement was "not enough to render the letter ambiguous," and pointed to the large body of case law where letters with similar statements were found to be unambiguous in their denial of benefits. 2015 WL 457049, at *6. That Defendant outlined their appeals process and was receptive to receiving more information from Plaintiffs does not change the fact that the letter represents a denial of liability.

It is plain from the face of the benefits letter that Defendant is denying Plaintiffs coverage for flood related damage. The language used is clear and unequivocal, and would be interpreted by any reasonable reader as a denial of benefits. Accordingly, the statute of limitations began to run again on the date on which Plaintiffs received the letter. After December 10, 2013, Plaintiffs were barred from bringing suit based on their contractual agreement with Defendant.

### III. Plaintiffs' consumer fraud claims are indistinguishable from their breach of contract claims and as a result are also time barred

Plaintiffs argue that even if the Court finds that their breach of contract claims are barred by the one-year statute of limitations, their consumer fraud claims are not subject to the same statute of limitations and should survive the motion for summary judgment.

The default statute of limitations for claims brought under the New Jersey Consumer Fraud Act (NJCFA) is six years. This statute of limitations may also be contractually limited to one year where the NJCFA claims are directly related to the contract containing the one-year limitation. *Biegalski v. American Bankers Ins. Co.*, 2016 WL 1718101, at *4 (D.N.J. Apr. 29, 2016). While the NJCFA encompasses the sale of insurance policies, it was not intended as a vehicle to dispute an insurer's denial of benefits. *Myska v. New Jersey Mfrs. Ins. Co.*, 440 N.J. Super. 458 (App. Div. 2015). NJCFA claims that merely dispute the amount of or denial of benefits by an insurance company are not properly brought under the NJCFA. In order for claims to be considered separately under the NJCFA, and subject to that statute of limitations, they must exist independently from the contract of insurance. Plaintiffs have not asserted any claims for violations of the NJCFA that occurred independently of the conduct at issue in the contractual claims already discussed. All of Plaintiffs NJCFA claims related directly to the insurance policy dispute over the denial of benefits. These claims cannot be considered independently of the contractual claims, and are subject to the same one-year statute of limitations as the contractual claims.

## CONCLUSION

Plaintiff's breach of contract and consumer fraud claims are time barred and cannot be considered by this Court. Defendant Liberty Mutual's motion for summary judgment is granted. An appropriate order follows.

DATE: 17 January 2017

William H. Walls
Senior United States District Court Judge